PER CURIAM.
Clarence J. Paul appeals his conviction and sentence for four counts of lewd, lascivious, or indecent assault on K.P., a child under sixteen years of age. Paul raises two issues on appeal, one of which we need not reach. Paul argues that the trial court erred in admitting the testimony of P.B. as “similar fact” evidence. We agree and reverse.
Paul was charged in a five-count information with two counts of sexual battery on K.P. by one in familial or custodial authority, and three counts of lewd, lascivious, or indecent assault on K.P., a child under sixteen. When the state filed a notice of similar fact evidence, indicating its intent to introduce the testimony of P.B., a fourteen-year-old, concerning her experiences with the appellant approximately four years earlier, Paul filed a motion in limine to exclude P.B.’s testimony. The trial court held a hearing in chambers on the day of the trial.
The state argued that P.B.’s testimony was relevant on the charges as to K.P. to show a common plan, scheme, method of operation, or modus operandi to commit the present offenses. Paul argued that the proffered testimony did not go to any issue in dispute, that it went only to propensity or bad character, and that its prejudicial effect outweighed its probative value, if any. The trial court denied the motion in limine and stated that P.B.’s testimony “should be admissible to prove a fact in dispute, which is whether this accused committed this crime.”

*753
P.B.

At trial, the state called P.B. as its first ■witness. Paul renewed his motion in limine, which was again denied. P.B. testified that she first met Paul at school when she was in the fifth grade and Paul was a volunteer at P.B.’s school. P.B. testified that Paul showed her a lot of attention, carried her books, hugged her “in front” “real tight,” rubbed her back, and “pat[ted her]” on “[the] butt.” This all took place in the halls at school and nowhere else, she testified. P.B. also testified that Paul sent her flowers three times with cards that said, “I love you,” and that he gave her about $10 every three weeks. P.B. testified that, after she received roses from Paul for Valentine’s Day, her mom complained to the School Board and Paul never came close to her again.

KP.

KJP.’s mother testified that Paul worked for her as the maintenance man at her apartment complex, that Paul sometimes supervised K.P. (and her brothers) with her permission, and that Paul was allowed in the apartment when the children were babysitting themselves.
K.P., who turned thirteen on June 18, 1993, testified that she had met Paul at school when she was in the third grade, that he paid attention to her at school, once gave her roses with a card for Valentine’s Day, and that he brought her candy. K.P. testified that Paul first touched her “in a way that [she] didn’t like” on June 1, 1993, some three or four years later. She said Paul kissed her on the lips and later rubbed her stomach while she was sitting on his lap as they drove home.
The jury found Paul guilty of four counts * of lewd, lascivious, or indecent assault on a child under the age of sixteen. The trial court adjudicated Paul guilty and sentenced him to fifteen years in prison on Count I, five years consecutive on Count II, and concurrent fifteen-year probationary terms on each remaining count, consecutive to incarceration.
On appeal, Paul argues that the trial court erred in admitting the testimony of P.B. as similar fact evidence. The state counters that P.B.’s testimony was relevant to show a common plan, scheme, or modus operandi.
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity-
§ 90.404(2)(a), Fla. Stat. (1993). The state also points out that our supreme court has expanded the scope of admissible similar fact evidence where the person allegedly committing the sexual offense was in familial or custodial authority.
Cases involving sexual battery committed within the familial context present special problems. The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue. In such cases, some courts have in effect relaxed the strict standard normally applicable to similar fact evidence. These courts have allowed evidence of a parent’s sexual battery on another family member as relevant to modus operandi, scheme, plan or design, even though the distinction between sexual design and sexual disposition is often tenuous. We find that the better approach treats similar fact evidence as simply relevant to corroborate the victim’s testimony, and recognizes that *754 in such cases the evidence’s probative value outweighs its prejudicial effect.
Heuring v. State, 513 So.2d 122, 124 (Fla.1987) (citations omitted). In the present case, however, there was no finding that Paul was in familial or custodial authority over K.P. and it is clear that there was no familial or custodial relationship between Paul and P.B. Therefore, the relaxed Heuring rule is not applicable.
The Heuring court stated that in a non-familial, non-eustodial setting, the similar fact evidence must be sufficiently similar to be admissible.
The trial court, however, correctly excluded direct evidence of [the] molestations [of five children not in issue in the case] since they were not sufficiently similar to the charged offenses.
Id. at 125. See also Saffor v. State, 660 So.2d 668 (Fla.1995); Hayes v. State, 660 So.2d 257 (Fla.1995). In Ables v. State, 506 So.2d 1150 (Fla. 1st DCA 1987), the defendant was charged with sexual battery on his niece. The defendant’s stepdaughter testified that the defendant had earlier pulled her pants down, telling her he wanted to see if she was still a virgin, and, still earlier, woke her up one night and asked her to undress (which she refused). Id. at 1151. We held that the stepdaughter’s testimony was not sufficiently similar to be relevant to prove identity, intent, plan and design, lack of inadvertence, or a pattern of criminality. Id. at 1152. Although in the wake of Heuring, we have limited the scope of our decision in Abies, see Adkins v. State, 605 So.2d 915, 918 (Fla. 1st DCA 1992), Abies is still applicable in cases, such as the present case, where no familial or custodial authority is proven.
In the present case, there was no allegation or proof that Paul ever committed any lewd, lascivious, or indecent act on P.B. Her testimony concerning gifts and attention that she received approximately four years earlier (perhaps contemporaneously with K.P.) was not “sufficiently similar to the charged offenses.” P.B.’s testimony was not relevant to show an alleged common plan or scheme to commit the fondling and digital penetration of K.P. Nor did P.B.’s testimony prove a similar modus operandi. P.B. testified to no digital penetration, breast fondling, or baby wipes. K.P. testified to no tight hugs or pats on the backside. The “similar fact” testimony here proved acts that bore less resemblance to the crime charged than the molestations, evidence of which was held properly excluded in Heuring, or the prior episodes proven in Abies, bore to the crimes charged in those cases. The need for reversal is clearer here than in Abies. P.B.’s testimony was relevant solely to prove bad character or propensity, and its admission was error.
The improper admission of similar fact testimony is presumed harmful error. Abies, 506 So.2d at 1152, citing Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). The state does not argue here that the testimony of its lead witness, which became a focus of closing argument, was harmless, if erroneously admitted. We conclude that the trial court’s admission of P.B.’s testimony was reversible error.
Accordingly, Paul’s convictions for four counts of lewd, lascivious, or indecent assault on a child under sixteen are reversed and remanded for a new trial.
ERVIN, BENTON and VAN NORTWICK, JJ„ concur.

 K.P. testified that on June 16, 1993, Paul took her to his house, laid her down on his bed, pulled her pants and panties down to her knees, and stuck his finger into her vagina. She testified that on June 18, 1993, Paul massaged her shoulders and breasts while they were walking to his truck and that once inside the truck Paul took her pants down and stuck his finger into her vagina. She also testified that on the Saturday or Sunday before her birthday Paul came over to her apartment, took a baby wipe, unzipped her pants, and wiped her on her vagina. Finally, K.P. testified that later that night she and Paul drove Paul's wife to Panama City and that on the way home Paul had his hands under K.P.'s blouse, massaging her breasts.